IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JENNIFER L. PHELPS,                          Case No. 3:15-cv-00994-JR

          Plaintiff,                         OPINION AND ORDER

    v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

               Defendant.

RUSSO, Magistrate Judge:

Plaintiff Jennifer Phelps brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title XVI Social Security Income ("SSI") under the Social Security Act ("Act"). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

On January 23, 2012, plaintiff applied for SSI. Tr. 146-54. Her application was denied initially and upon reconsideration. Tr. 85, 91-93. On November 21, 2013, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 26-53. On February 21, 2014, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 12-21. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-3.

## STATEMENT OF FACTS

Born on June 22, 1988, plaintiff was 23 years old on the amended alleged onset date of disability[1] and 25 years old at the time of the hearing. Tr. 28-29, 146. Plaintiff left high school during the twelfth grade but later joined the Job Corps and obtained her GED; she also attended, but did not complete, two terms of community college. Tr. 29-31. She worked previously as a caregiver. Tr. 32, 34, 168. Plaintiff alleges disability as of January 23, 2012, due to bipolar disorder, auditory learning disorder, and anxiety. Tr. 28, 167.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the

---

[1] Plaintiff initially alleged disability as of November 1, 2002, but amended her alleged onset date at the hearing to conform to the application date. Tr. 28, 146.

[Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(f). If the claimant can work, she is not disabled; if she

cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 14. At step two, the ALJ determined plaintiff's bipolar disorder, anxiety, and learning disorder were severe impairments. Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 15.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: "understanding and remember[ing] 1-2 step instructions," "perform[ing] minimal reading and writing," "brief superficial public interaction," and "work[ing] in a small work setting with occasional co-worker interaction." Tr. 16.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 19. At step five, the ALJ concluded, based on the VE's testimony, there were a significant number of jobs in the national and local economy that plaintiff could perform despite her impairments, such as hand packager, basket filler, and laundry sorter. Tr. 19-20.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) discrediting her subjective symptom statements; (2) rejecting the lay testimony of her mother, Mary Prindiville; (3) affording less weight to opinion evidence from treating doctor Robert Vandiver, M.D., and examining doctor Emil Slatick, Ph.D.; and (4) failing to include all of her limitations in the RFC, such that the VE's testimony was invalid.

The Commissioner concedes that reversal of the ALJ's decision is warranted. Def.'s Resp. Br. 1-2. Specifically, the Commissioner acknowledges that the ALJ committed harmful legal error by "misread[ing]" Dr. Vandiver's opinion. Id. at 6. Thus, the sole issue on review is whether this case should be remanded for further proceedings or for the payment of benefits.

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir.), cert. denied, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138-39 (9th Cir. 2011) (citation omitted). The court may not award benefits "unless [the record demonstrates that] the claimant is, in fact, disabled." Id. at 1138. Pursuant to the discretionary credit-as-true doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be

Page 5 - OPINION AND ORDER

required to find the claimant disabled were such evidence credited. Id.; Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

Here, plaintiff contends that remand for the immediate payment of benefits is proper based on the VE's testimony, which indicated a hypothetical individual that was unable to remain productive in the workplace for at least 85% of the time or could not sustain simple, routine tasks without supervision was not competitively employable. Pl.'s Opening Br. 19-20 (citing Tr. 52-53); Pl.'s Reply Br. 8. Conversely, the Commissioner asserts that remand for further proceedings is required because the record is ambiguous in light of plaintiff's activities of daily living. Def.'s Resp. Br. 10-14.

Initially, the Court need not resolve whether the ALJ improperly rejected the medical opinion of Dr. Slatick because, even if credited as true, it is not clear based on this evidence that the ALJ would be required to find plaintiff disabled. This is because Dr. Slatick's report did not contain any concrete functional restrictions. Tr. 276-86. Rather, Dr. Slatick's one-time examination – which assessed plaintiff with a full scale IQ in the low-average range, with memory abilities largely commensurate with intellectual functioning – resulted in certain diagnoses and a narrative summary containing a number of "recommendations . . . that can be helpful for individuals with difficulties similar to [plaintiff's]." Tr. 284-85; see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 691-92 (9th Cir. 2009) (recommendations or suggestions from medical providers are not work-related limitations of function that must be reflected in the RFC); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999) (ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity").

Likewise, it is not clear from Dr. Vandiver's opinion that plaintiff is disabled. Significantly, all the work-related limitations of function outlined in Dr. Vandiver's report are phrased equivocally. See Tr. 372 ("I suspect [plaintiff] would insist upon absences from any job and would require a lot of time and attention in order to succeed. Perhaps if she was in a sheltered workshop she might be successful but anything resembling an actual employment environment would probably be met with failure"); see also Glosenger v. Comm'r of Soc. Sec. Admin., 2014 WL 1513995, *6 (D. Or. Apr. 16, 2014) (ALJ need not accept a doctor's opinion that uses "speculative [or] equivocal language ('might do better' and 'would also likely require')"). In addition, plaintiff did not receive any counseling and the remainder of her relevant treatment consisted of visiting her primary care doctor, typically every three months, for medication management; during these visits, plaintiff frequently denied the existence of any psychiatric symptoms. Tr. 35, 260-69, 316, 320-29, 365-71. As a result, although her treating providers noted her "reluctant" or "passive" affect, they nonetheless described plaintiff as "doing well" on her current medication and consistently assigned her a global assessment of functioning ("GAF") score of 60, reflecting mild to moderate symptoms.[2] Tr. Tr. 260-69, 320-29, 365-70; Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

Finally, the ALJ did not err to the extent he did not fully credit the testimony of plaintiff and Ms. Prindiville. As the ALJ noted, plaintiff's activities of daily living are inconsistent with her and her mother's claims that she "could not work primarily because of mental limitations."

---

[2] The only other GAF score in the record was assessed by Dr. Slatick and is at odds with Dr. Vandiver's coterminous chart notes. Compare Tr. 285 (Dr. Slatick assigning plaintiff a GAF of 45 in December 2011), with Tr. 260 (plaintiff reporting "[n]o complaints" and that "[t]hings are okay" in January 2012), 261 (plaintiff remarking that "[e]verthing is going well," with "[n]o complaints," in October 2011).

Page 7 - OPINION AND ORDER

Tr. 17, 19; see also Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (activities may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment"); Valentine, 574 F.3d at 694 (ALJ may reject lay testimony on the same basis as the claimant's discredited subjective reports). The record before the Court demonstrates that plaintiff engages in a wide slate of daily activities. Namely, she has sole custody of her young daughter,[3] with whom she lives independently. Tr. 38-39, 188. Tuesday through Friday, from 8:30am to 1:00pm, her daughter attends a Head Start program; the remainder of the time, plaintiff takes care of and does activities with her daughter, such as reading, watching movies, riding bikes, doing crafts, and going to the park. Tr. 39, 189, 192, 200. "Occasionally" – i.e., approximately "a couple of times a week" – plaintiff experiences symptoms from her mental impairments, such that she will "need a break" and "call [her] mom [to babysit] for a couple of hours." Tr. 36, 39-40, 189. Nevertheless, plaintiff reported that being a parent caused her depression to improve. Tr. 38. Plaintiff is also independent in her self-care, manages her own funds, occasionally talks on the phone or texts with friends, drives her mother to work two to four times per week, shops, cleans her house and shops weekly, prepares several meals daily, and attends her daughter's family nights and field trips.[4] Tr. 40, 45-47, 189-92, 198-99.

---

[3] Plaintiff's daughter was four years old at the time of the hearing. Tr. 38.

[4] Plaintiff's hearing testimony was often imprecise. See, e.g., Tr. 30, 42 (plaintiff "honestly can't remember" what her symptoms were like prior to treatment or what prevented her from performing her previous caregiving job); see also Coaty v. Colvin, 2015 WL 1137189, *3 (D. Or. Mar. 11, 2015) ("an adverse credibility finding is a determination that a claimant's testimony is not reliable, as opposed to dishonest") (citations omitted). Nevertheless, this evidence belies plaintiff's implication that her depression prevented her from maintaining a schedule or leaving the house to complete necessary activities. Tr. 30-33.

Page 8 - OPINION AND ORDER

Accordingly, the VE's testimony is not dispositive in the case at bar. See Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (dispositive hypothetical questions posed to the VE must only include limitations that are supported by substantial evidence); see also Pl.'s Opening Br. 19 (plaintiff recognizing that the VE was "not asked to address [the] specific work limitations [identified by Dr. Slatick]"). Moreover, there is a dearth of medical evidence concerning plaintiff's psychological functioning; as noted above, plaintiff did not obtain treatment, other than medication management, for her underlying mental impairments and, perhaps as a result of those impairments, generally failed to endorse the existence of psychiatric symptoms. See, e.g., Tr. 283 (Dr. Slatick noting that plaintiff's personality traits and psychopathology may result in "an underestimation of [her] psychological issues"). Given these circumstances, the Court finds that testimony from a medical expert ("ME") is appropriate.

Therefore, this case is remanded for further proceedings. Upon remand, the ALJ must consult an ME to define any functional limitations associated with plaintiff's mental impairments and, if necessary, reformulate plaintiff's RFC and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this 28th day of June 2016.

_____
Jolie A. Russo
United States Magistrate Judge